UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

BENJAMIN HORN,

        Plaintiff,

v.                                        Case No. 2:11-CV-448

CITY OF MACKINAC ISLAND,            HON. GORDON J. QUIST

        Defendant.
_____/

## OPINION

      Plaintiff, Benjamin Horn, has sued Defendant, the City of Mackinac Island, alleging that the City improperly interfered with his right to conduct his peddling business pursuant to his veteran's peddler's license. In Counts I and III of his Complaint, Horn alleges claims under 42 U.S.C. § 1983 for violation of his due process rights under the Fourteenth Amendment and retaliation in violation of the First Amendment. In Count II, Horn requests a declaratory judgment that the City's Ordinance No. 459 is preempted by state law.[1] Finally, in Count IV, Horn seeks a declaratory judgment that Ordinance No. 459 violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

---

[1] Horn cites Michigan Court Rule 2.605 as the basis for his state law claim for declaratory relief. Because declaratory judgment acts are procedural in nature and do not affect underlying substantive rights, the *Erie* doctrine, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), mandates application of the Declaratory Judgment Act, 28 U.S.C. § 2201, to Horn's request for declaratory relief based on state law. *See Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1299 n.2 (W.D. Okla. 2012) ("[W]hile state law governs the substantive rights and duties of the parties regarding the state law claims, whether Plaintiff can assert a declaratory judgment action in this Court is governed by federal law."); *Allstate Ins. Co. v. Martinez*, No. 3:11cv574(VLB), 2012 WL 137966, at *8 (D. Conn. Apr. 20, 2012) (holding that the plaintiff's claim for declaratory relief based on diversity jurisdiction was governed by the Declaratory Judgment Act rather than the Connecticut declaratory judgment statute); *Westfield Ins. Co. v. Puett*, No. 3:10cv142, 2010 WL 411731, at *1 (M.D. Pa. Jan. 26, 2010) (noting that "Federal courts have concluded that declaratory judgment actions are procedural rather than substantive" and thus applying "the procedural strictures of the federal Declaratory Judgment Act").

The City has filed a Motion for Summary Judgment seeking dismissal of all of Horn's claims. Horn has filed a response to the City's motion, to which the City has replied. Having carefully reviewed the parties' briefs and supporting materials, the Court will grant the City's motion in part and deny it in part.

## I. BACKGROUND

The facts material to the instant motion are largely undisputed.

The City of Mackinac Island is located on Mackinac Island, a well-known tourist and resort destination. Approximately eighty-five percent of Mackinac Island is a state park. With some limited exceptions, motor vehicles are prohibited on the island. Generally available modes of transportation are limited to walking, bicycling, and riding in horse-drawn carriages.

During 2010, the City did not have an ordinance or regulation governing peddling or hawking of goods. The City previously had an ordinance requiring solicitors or peddlers to register with the City Clerk, (Pl.'s Resp. Br. Ex. H), but that ordinance was repealed in 2002 by Ordinance No. 998. (Def.'s Br. Supp. Ex. 10.) The City thereafter lacked an ordinance governing street vendors or peddlers until September 21, 2011, when the City enacted Ordinance No. 459. Ordinance No. 459 provides, in relevant part, that "no person shall sell or offer to sell, or display or attempt to display for sale, goods, wares, produce, food, drinks, or merchandise within the right-of-way of any public street or sidewalk within the City of Mackinac Island." (Ordinance No. 459, § 2, Compl. Ex. C.)

Horn is a native and resident of Mackinac Island. Horn served in the United States Army from September 25, 1997, to March 31, 2005, when he was honorably discharged. (Horn Aff. ¶ 3, Pl.'s Resp. Br. Ex. A.) After earning a degree from Washtenaw Community College in May 2010, Horn obtained a veteran's peddling license pursuant to M.C.L. § 35.441, in furtherance of his plan

2

to start a peddling business on Mackinac Island. The Michigan veteran's peddling statute, which has been in effect in various iterations since the early 1900s, provides:

> Every honorably discharged member of the armed forces of the United States who served at least 180 days of active duty service in the armed forces or has a service connected disability as a result of that service and is a resident of this state has the right to sell his or her own goods within this state if the proceeds from the sale of the goods are to be used for the direct personal benefit or gain of that former member, by procuring a license for that purpose issued as provided in this act, which shall be valid for a period of 1 year.

M.C.L. § 35.441. A veteran must obtain a peddler's license from the clerk of the county in which the veteran resides. M.C.L. § 35.442. A veteran who possesses a peddler's license need not obtain a peddler's license or permit from a local municipality to sell his own goods, but the veteran must still comply with the municipality's otherwise applicable regulations. *See Williams v. City of Rochester Hills*, 243 Mich. App. 539, 559, 625 N.W.2d 64, 75 (2000).

In June 2010, Horn's father asked the City's Police Chief, James Marks, whether a veteran's peddler's license was valid for selling goods in the City. Chief Marks conferred with the City's zoning ordinance officer/building inspector, who advised Chief Marks that Horn and his father could not sell their goods in the City without a business license. (Marks Dep. at 11–12, Def.'s Reply Br. Ex. 1.) Subsequently, in separate conversations, Chief Marks informed both Horn and Horn's father that they may not conduct a peddling business without first obtaining a business license. (*Id.* at 12–13.)

On July 4, 2010, Horn commenced his peddling business within the City, selling various items, including beverages and small wares from his bicycle's cooler cart. Horn stopped selling his merchandise about a week later, after he was warned that he needed a business license to conduct his business. Thereafter, Horn applied for a business license, but his application was doomed from the outset. The City's Business License Ordinance requires that licensees comply with all zoning

3

regulations. (Code of Ordinances Ch. 14, Art. II, § 14-36(b), Def.'s Br. Supp. Ex. 8.) Under the City's Zoning Ordinance, commercial uses are permitted only in the business district and the historic district. (Zoning Ordinance, Art. 9, §§ 9.01–9.02; Art. 10, §§ 10.01–10.02, Def.'s Br. Supp. Ex. 9.) Both ordinances require that a business be operated within a structure having a minimum of 400 square feet. (*Id.*, Art. 9, § 9.04.A; Art. 10 § 10.04.F.) In a conversation in late July 2010, the mayor's administrative assistant told Horn that his business license application would be denied even before it reached the City Council because business licenses are not issued for peddling. (Email from Bean to Evashevski of 7/29/10, Pl.'s Resp. Ex. C.) Consistent with this statement, the City Council denied Horn's business application request at its August 11, 2010, meeting. City Attorney Tom Evashevski told Horn that there would be "no next step" for Horn to obtain a business license or use his veteran's peddler's license to conduct his peddling business. (Horn. Aff. ¶ 7.) Therefore, Horn did not conduct his business for the remainder of the 2010 tourist season.

At some point in 2010 or 2011, Horn retained counsel and learned that his peddler's license allowed him to conduct his peddling business in the City because there was no City ordinance prohibiting such activity. Based on this advice, Horn resumed his peddling business on May 17, 2011. (*Id.* ¶ 9.) Shortly thereafter, Horn attended a City Council meeting, during which the City Council conceded that no ordinance regulated or prohibited peddling. The City Council advised Horn that he should conduct his business at the Four Corners (Cadotte Avenue, Hoban Road, Annex Road, and Carriage Road) location. (*Id.*)

During the summer of 2011, the City's Ordinance Committee began to explore options for regulating the sale of goods in the City's streets. At the June 9, 2011, meeting, the City Attorney presented a draft ordinance regarding the sale of goods in City streets. Over the summer, the Ordinance Committee continued to review and revise the proposed ordinance at subsequent

4

meetings and eventually presented it to the City Council.  On September 21, 2011, the City Council adopted Ordinance No. 459, which prohibits the sale of goods on City streets and sidewalks. Effectively, Ordinance No. 459 is a complete ban on peddling in the City.[2]  Ordinance No. 459 took effect on October 19, 2011.  (Compl. Ex. C.)

Horn resumed his peddling operation in the spring of 2012 at the Four Corners location that the City Council had previously approved.  On June 8, 2012, Chief Marks cited Horn for peddling in violation of Ordinance No. 459 and assessed Horn a $110.00 fine.  Horn subsequently filed a motion to dismiss in the state district court, arguing that his state-issued peddler's license preempted Ordinance No. 459.  On August 21, 2012, the district court denied Horn's motion.  (8/21/12 Opinion and Order, Def.'s Br. Supp. Ex. 13.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

---

[2]Ordinance No. 459 does contain an exception that allows charitable non-profit organizations to apply for permits to sell food, drinks, and wares in public streets or sidewalks.

### III.  DISCUSSION

**A.      Due Process Violations**

In Count I, Horn alleges that the City violated his right to due process in two respects.  First, Horn contends that the City denied him due process when it falsely told him that he was prohibited from peddling in July 2010.  Second, Horne alleges that Ordinance No. 459, which in effect bans all peddling within the City, violates his due process rights by precluding him from conducting his peddling business under his state-authorized veteran's peddling license.

**1.      "Own Goods"**

At the outset, the Court addresses the City's novel argument that regardless of the City's actions, Horn was not in compliance with the veteran's peddler's license statute "because he was not peddling his own goods."  (Def.'s Br. Supp. at 9–10.)  The City does not claim that Horn was selling stolen goods or that he was selling goods that belonged to someone else.  In fact, the City concedes that Horn purchased the goods that he sold from another source and, therefore, owned them.  However, citing *Williams v. City of Rochester Hills*, 243 Mich. App. 539, 625 N.W.2d 64 (2000), the City suggests that a veteran is not engaged in the sale of "his or her own goods" if the goods were purchased from another source.  *Williams* provides no support for the City's argument.  In *Williams*, the city's ordinance allowed seasonal roadside stands for the sale of produce and Christmas trees so long as the produce was grown on the immediate property or on property within the city that the applicant either leased or owned.  *See id.* at 544, 625 N.W.2d at 67.  In its motion to dismiss, the city argued that no actual controversy existed because M.C.L. § 35.41 applies only to veterans selling their own goods, and the plaintiff was purchasing his goods from other markets and not growing them himself.  *Id.* at 542 n.3, 625 N.W.2d at 66 n.3.  The plaintiff responded with an affidavit stating that he sold only his own goods.  *Id.* at 543 n.4, 625 N.W.2d n.4.  The Michigan

6

Court of Appeals did not resolve the issue, nor did it even address the meaning of the phrase "his or her own goods" in the statute. In any event, the City's argument is unpersuasive. When considering the language of a statute, a court should accord all non-technical words and phrases their common and ordinary meaning. *McCormick v. Carrier*, 487 Mich. 180, 192, 795 N.W.2d 517, 525 (2010). Here, the phrase "his or her own goods" could not be clearer. "Own goods" means goods belonging to the individual—which was the case here. The City's assertion that goods purchased from another source cannot be an individual's "own goods" not only ignores the plain meaning, but necessarily and improperly reads words into the statute that the Michigan legislature did not include.[3]

## 2.    Due Process

Although Horn alleges due process claims in his Complaint, he does not specify whether he claims procedural due process violations, substantive due process violations, or both. "Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in life, liberty, or property, but deprivation of those interests without due process of law." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 546 (6th Cir. 2012) (internal quotation marks omitted). The essential requirements of procedural due process are notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985).

---

[3]The City's argument could also severely restrict the scope of the statute. As the Court understands the City's position, a veteran can only sell goods that he does not purchase or obtain from someone else. It appears that the City would agree that a veteran could sell a wood carving he made from wood that he found on his own property. But what if the veteran purchased the wood from another person or someone gave him the wood? Is it enough that the veteran makes or produces the final product, or would the final product still not be the veteran's own goods if the veteran incorporates raw materials purchased from another source into the final product? Consider, for example, a veteran who purchases pre-made sub sandwiches and resells them. The sub sandwiches would not be the veteran's "own goods" under the City's interpretation. The same could be true even if the veteran made the subs himself but purchased the bread, meat, and cheese from someone else, because the ingredients would not be the veteran's "own goods." The question the City's interpretation poses—which fortunately does not inhere in text of the statute—is when are a veteran's own goods his "own goods."

7

"Substantive due process, on the other and, serves the goal of preventing governmental power from being used for purposes of oppression, regardless of fairness of the procedures used." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (internal quotation marks omitted). Substantive due process claims include deprivations of specific constitutional guarantees and government actions that "shock the conscience." *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993), and *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)). Based on Horn's response to the City's motion, the Court understands Horn to be asserting substantive due process claims rather than procedural due process claims and will analyze Horn's due process claims as such.[4]

### a. Liberty or Property Interest

The first step in analyzing both procedural and substantive due process claims is determining wether the plaintiff possesses an interest protected by the Due Process Clause—typically a liberty or property interest. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Horn alleges that he has a protected liberty interest in pursuing gainful employment as a peddler. For purposes of a substantive due process claim, liberty interests are interests "so rooted in the traditions and conscience of our people as to be ranked fundamental." *Patterson v. New York*, 432

---

[4]Horn does not allege a lack of notice or opportunity to be heard regarding either aspect of his due process claim, and it would be difficult to perceive how Horn could reasonably mount a procedural due process challenge. Regarding Horn's claim concerning the improper application of the business license ordinance, Horn appears to have received all the process to which he was entitled—notice that the City asserted that he needed a license and the opportunity to apply for a license. It also appears that the procedure the City followed in adopting Ordinance No. 459 satisfies any procedural due process concerns. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1237 (9th Cir. 2009) (stating that "the relevant question for due process purposes is not whether Section 80.73.2 is defective as a matter of state law, but whether the City, in implementing the ordinance, provided the level of notice required whenever the government 'alter[s] substantive rights through enactment of rules of general applicability'" (quoting *United States v. Locke*, 471 U.S. 84, 108, 105 S Ct. 1785, 1799–1800 (1985) (alteration in original)).

U.S. 197, 201–02, 97 S. Ct. 2319, 2322 (1977). The Supreme Court has recognized that a liberty interest includes "the right of the individual . . . to engage in any of the common occupations of life." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 2707 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626 (1972)); *see also Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S. Ct. 1292, 1295–96 (1999) (noting that "this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment"); *Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995) ("Freedom to pursue gainful employment is clearly a liberty interest deserving of due process protections."). Thus, Horn is correct that he has a liberty interest in his pursuit of his career as a peddler.

Although Horn does not allege a property interest in his Complaint, in his response brief he argues that he also has a property interest in the goodwill of his peddling business and in his peddler's license.[5] Property interests are not created by the Constitution, but instead "'stem from an independent source such as state law.'" *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002) (quoting *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709). However, "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (internal quotation marks omitted). Under Michigan law, Horn had a property interest in his license. *See Maxwell v. Dep't of Envtl. Quality*, 264 Mich. App. 567, 571–72, 692 N.W.2d 68, 72 (2004) ("Once given, a license becomes a protected property interest."). In addition, goodwill can constitute a protected property interest. *See Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686, 687 (6th Cir. 1981).

---

[5]The City does not dispute Horn's assertions regarding his property interests in his peddler's license and the goodwill of his business.

### b.  Substantive Due Process Violation

Having determined that Horn had protected a liberty interest in pursuing his occupation as a peddler and a property interest in his peddler's license, the Court next determines whether the City's conduct resulted in a violation.

Horn first contends that the City violated his right to substantive due process by enforcing an inapplicable ordinance—the business license ordinance—to prevent Horn from conducting his peddling business, when in fact there was no ordinance that precluded Horn from peddling.  Horn contends that the case is similar to *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir. 1983), in which the plaintiffs' evidence showed that the defendants harassed the plaintiffs and delayed their barbershop license application by applying  a costly rule known to be invalid, apparently for the purpose of precluding competition from the plaintiffs.  The Sixth Circuit concluded that such evidence was sufficient for "the jury to find bias on the part of all the defendants sufficient to violate plaintiffs' due process rights."  *Id.* at 329.  Horn also cites *Sanderson v. Village of Greenhills*, 726 F.2d 284 (6th Cir. 1984) (per curiam), to support his claim.  In *Sanderson*, the plaintiff sought to open a pool hall within the defendant village.  The plaintiff contacted the village administrator to inquire whether he needed a license under the village's "amusement devices" ordinance and was informed that he did not need a license because the ordinance only applied to coin operated devices.  However, one unidentified village council member stated that the plaintiff would need, but could not obtain, approval from the council.  Proceeding upon the administrator's advice, the plaintiff opened his business without obtaining a license.  Three hours after opening, the police chief ordered the pool hall closed because it was not licensed.  The police chief gave the plaintiff an application for a license but told him that he would not receive a license.  The plaintiff closed his business and filed suit.  Although the court found that the plaintiff did not have a protected property interest, it held that he sufficiently alleged a deprivation of a liberty interest "to engage in whatever legal business

10

he elects to pursue without arbitrary interference." *Id.* at 286.  The court observed that the plaintiff's evidence that village officials interfered with his business "simply [because they] did not desire a billiard parlor in the village" demonstrated arbitrary and unconstitutional conduct.  *Id.*

*Wilkerson* and *Sanderson* are not entirely consistent with the facts of this case because there is no evidence suggesting that the City applied an invalid rule in a biased manner.  However, bias is unnecessary to establish a due process violation.  *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir. 1985) ("While the City of Los Angeles may well have had authority to prohibit the activities of vendors entirely, absent a valid regulation of such activities, Chalmers had a right protected by the due process clause to engage in this occupation." (citation omitted)).  The Sixth Circuit "has recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1991) ("The right not to be subject to arbitrary or capricious action by a state either by legislative or administrative action is commonly referred to as a substantive due process right." (internal quotation marks omitted)).  However, a substantive due process violation will not be found unless there is no rational basis for the decision.  *Id.* at 1216.  In this case, Horn has shown that the City precluded him from selling his goods during 2010, when he had a state-issued license to do so, by applying an ordinance that, on its face, had no application to peddling. Under these circumstances, the City's actions were arbitrary and capricious.  *See Layman Lessons, Inc. v. City of Millersville*, 636 F. Supp. 2d 620, 652 (M.D. Tenn. 2008) (concluding that the defendant's planning commission's application of an inapplicable zoning regulation was not rational where there was no factual basis to apply the regulation to the plaintiff's property).  Therefore, the City is not entitled to summary judgment on this aspect of Horn's substantive due process claim.

11

The Court reaches a different conclusion with regard to the claim based on the City's enactment of Ordinance No. 459. Horn's due process claim is valid only if he can show that Ordinance No. 459 does not rationally further a legitimate governmental purpose. *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1477 (6th Cir. 1993). "Because [Horn] bears the burden of demonstrating that no rational basis exists for the statute, any conceivable basis is sufficient to sustain it, even if there is no indication that the suggested rationale actually motivated the [City] in enacting it." *Innes v. Howell Corp.*, 76 F.3d 702, 708 (6th Cir. 1996) (citing *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179, 101 S. Ct. 453, 461–62 (1980)); *see United States v. Dunham*, 295 F.3d 605, 611 (6th Cir. 2002) (noting that a rational basis supporting a law "need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction" (citation omitted)).

In *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S. Ct. 2513 (1976) (per curiam), the Supreme Court rejected a challenge to an ordinance amendment that prohibited all pushcart food vendors in the area considered the heart of the city's tourist industry but made an exception for vendors who had been in business for at least eight years. The Court found that the regulation advanced the city's legitimate interest in promoting its economy through the preservation of the historic character of the area.

> The City council plainly could further that objective by making the reasoned judgment that street peddlers and hawkers tend to interfere with the charm and beauty of a historic area and disrupt their enjoyment of that charm and beauty, and that such vendors in the Vieux Carre, the heart of the city's tourist industry, might thus have a deleterious effect on the economy of the city. They therefore determined that to ensure the economic vitality of that area, such businesses should be substantially curtailed in the Vieux Carre, if not totally banned.

*Id.* at 304–05, 96 S. Ct. at 2517. As for the exception, which favored two long-established food vendors, the Court observed that "the city could rationally choose initially to eliminate vendors of

more recent vintage." *Id.* at 305, 96 S. Ct. at 2517.  In *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009 (9th Cir. 1996), the Ninth Circuit upheld a municipal ordinance—similar to Ordinance No. 459 at issue in this case—banning the sale of goods, merchandise, and foodstuffs on all public streets, sidewalks, alleys, parks and beaches, even against a First Amendment challenge.  The Court found that the city had substantial interests in protecting the aesthetic appearance of its communities by eliminating visual blight caused by vendor stands and in protecting local tax-paying merchants from unfair competition.  *Id.* at 1013–14.

In the instant case, it appears that the City adopted Ordinance No. 459 to address traffic congestion and safety concerns rather than to further the economic vitality of its communities.  Even so, local governments have a legitimate interest in controlling traffic, decreasing congestion, and ensuring safety on their streets and sidewalks.  *See Fair Hous. Advocates Ass'n, Inc. v. City of Richmond Heights*, 209 F.3d 626, 637 (6th Cir. 2000).  This is especially true in this case, where the City's streets are subject to heavy pedestrian, bicycle, and horse-drawn carriage traffic.  *Cf. Curto v. City of Harper Woods*, 954 F.2d 1237, 1244–45 (6th Cir. 1992) (concluding that a zoning ordinance that limited the number of vehicles allowed to be parked on the premises of service stations, regardless of parking lot size, advanced the city's legitimate interests in the safety and welfare of its citizens and aesthetic concerns of the community).  The ban on sales of goods and other items on the City's streets and sidewalks is reasonably related to the congestion and safety concerns embodied in Ordinance No. 459.

Horn contends that Ordinance No. 459 was unnecessary because he was the only person engaged in peddling in the City and his activity had not generated any complaints or concerns.  Even so, the City was not obligated to produce evidence supporting the need for the ordinance, *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643 (1993), and this court "may not sit as a

13

superlegislature to judge the wisdom or desireability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Dukes*, 427 U.S. at 303, 96 S. Ct. at 2517.

Horn further argues that Ordinance No. 459 violates his due process rights because it is preempted by state law. Assuming *arguendo* that such is the case, Horn fails to cite any authority supporting his assertion that a state law alleged to be invalid violates any right protected by the substantive component of the Due Process Clause. *See Lone Star Sec. & Video*, 584 F.3d at 1236 ("Lone Star does not suggest, nor could it, that its invalid-ordinance claim is based on *substantive* due process."). Moreover, Horn has not shown that Ordinance No. 459 is so clearly unlawful that no reasonable trier of fact could conclude that it is supportable on any rational basis. *See Laidley v. City & Cnty. of Denver*, 477 F. App'x 522, 525 (10th Cir. 2012) ("Even clear violations of state law do not automatically or necessarily rise to the level of substantive due process."); *Shelton v. Rutherford Cnty.*, 780 F. Supp. 2d 653, 666 (M.D. Tenn. 2011) (concluding that the county commission's reliance on a zoning ordinance was not "completely irrational" where two courts had questioned the ordinance but no court had ever found it illegal or void).

## B.    Retaliation Claim

In Count IV, Horn alleges that the City retaliated against him for speaking out against the City's efforts to ban peddling by enacting Ordinance No. 459. In order to establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Horn's

retaliation claim fails because Horn has not shown that his speech motivated the City to enact Ordinance No. 459.

Regarding protected conduct, Horn's comments at City Council and Ordinance Committee meetings are conduct protected by the First Amendment.[6]  *See Fritz*, 592 F.3d at 723.  In addition, the enactment of an ordinance that effectively precludes a person from engaging in a certain type of business is sufficiently adverse to deter a person of ordinary firmness from continuing to speak at public meetings or criticize the City Council.  However, Horn fails to present evidence that the City's adoption of Ordinance No. 459 was motivated by Horn's exercise of his First Amendment rights.  Instead, the evidence shows that the City enacted Ordinance No. 459 solely in response to Horn's peddling.  In fact, the City sought to prohibit Horn's peddling activity before Horn engaged in protected conduct by informing Horn, albeit erroneously, that he needed a business license for his peddling business.  The undisputed evidence shows that the City enacted Ordinance No. 459 not because Horn engaged in First Amendment conduct, but because the City discovered that it had no ordinance on its books regulating sales within its streets and sidewalks.  *See Arnold v. City of Columbus*, Nos. 11-3459, 11-3815, 2013 WL 628447, at *11 (6th Cir. Feb. 20, 2013).  At best, Horn can show that the City enacted Ordinance No. 459 after he engaged in protected conduct, but this alone is not enough to survive summary judgment.  *See Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 875 (6th Cir. 1990) (noting that "*post hoc, ergo propter hoc* is not a rule of legal causation").

## C.      Declaratory Relief

### 1.      Equal Protection

---

[6]Horn's assertion that his vending activities constituted protected activity is not supported by the record. There is no evidence suggesting that Horn was engaged in commercial speech as part of his sales or that Horn's speech had any bearing on the City's adoption of the ordinance.  *See Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, No. C.A. No. 12-96-ML, 2012 WL 6128707, at * (D.R.I. Dec. 10, 2012) ("Neither of the Ordinances at issue precludes the Plaintiffs from engaging in activities that can be considered 'commercial speech.'").

In Count III, Horn requests a declaratory judgment that Ordinance No. 459 violates the Equal Protection Clause because it target peddlers in general, and veteran peddlers in particular. (Compl. ¶ 56.)  The Equal Protection Clause prohibits states from making distinctions that (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat a person differently from others similarly situated without any rational basis for doing so.  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  Where, as in this case, "no suspect class or fundamental right is implicated, government action subject to equal protection scrutiny must be sustained if any conceivable basis rationally supports it."  *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 790 (6th Cir. 2005) (internal emphasis omitted).

The Court denies Horn's request for the requested declaratory relief because Horn fails to show that Ordinance No. 459 violates the Equal Protection Clause.  First, Horn fails to show that the ordinance treats peddlers, including peddlers with veteran's peddler's licenses, differently from others similarly situated.  In fact, Horn fails to identify any persons who are similarly situated to peddlers.[7]  Moreover, for the reasons already stated, the City has a rational basis for precluding sales of goods within its streets and sidewalks.

## 2. Invalidity Under State Law

In Count II, Horn requests a declaratory judgment that Ordinance No. 459 is preempted by state law and is contrary to his veteran's peddler's license.  The City argues that this claim is barred by the doctrine of collateral estoppel, or issue preclusion.  A federal court must accord the same preclusive effect to a state-court judgment that the rendering state would give.  28 U.S.C. § 1738.  The City argues that, in light of the state district court's prior ruling rejecting essentially the same

---

[7]Horn argues in his response brief that the City has treated other businesses differently than Horn by only issuing them a warning about the ordinance, whereas Horn was issued a citation.  (Pl.'s Resp. at 19.)  Horn's claim, however, is not one of selective enforcement, but instead that the ordinance itself violates Horn's equal protection rights.

arguments that Horn raises in this case, Michigan's preclusion doctrine of collateral estoppel, or issue preclusion, precludes Horn from challenging the validity of Ordinance No. 459 in this case.[8]

The Court concludes that collateral estoppel does not preclude Horn's state law claim for declaratory relief.  In his Complaint, Horn alleges that: (1) Ordinance No. 459 is preempted by state law; and (2) Ordinance No. 459 is in contravention of Horn's veteran's peddler's license.  (Compl. ¶¶ 49–51.)  While the state court addressed these arguments in denying Horn's motion to dismiss the civil infraction, collateral estoppel does not apply in this case because "the application of collateral estoppel requires that a *question of fact* essential to the case was previously litigated and decided by a final and valid judgment."  *Greenbrooke Parkhomes Condominium Ass'n v. Household Fin. Corp. III*, No. 301516, 2012 WL 833247, at *2 (Mich. Ct. App. Mar. 13, 2012) (per curiam) (italics in original) (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 682–684, 677 N.W.2d 843, 845–46 (2004)).  The state-law issues that Horn raises in this case, which the state court addressed in the civil infraction proceeding, are pure issues of law.  Thus, in deciding these issues, the state court was not required to decide issues of fact.  *See id.* (noting that "[i]n the previous case, there were no fact questions involved and the court resolved it based upon its interpretation of" various statutes).

Although Horn's state-law claim for declaratory relief is not barred by collateral estoppel, the Court exercises its discretion under the Declaratory Judgment Act to decline to decide Horn's state-law request for a declaratory judgment.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 2143 (1995) (noting that "a district court is authorized, in the sound exercise of its

---

[8]The City raised its collateral estoppel argument for the first time in its reply brief.  Although courts generally deem waived arguments first raised in a reply brief, *see Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *22 (N.D. Ill. Feb. 2, 2006) (noting that "arguments raised for the first time in a reply are waived"), the Court has discretion to consider an argument first raised in a reply brief if it involves a pure issue of law.  *United States v. Swanson*, 209 F. App'x 522, 524 (6th Cir. 2006).

discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close").  In particular, the Court notes that the issues Horn raises are somewhat novel issues of state law that should be left to Michigan courts in the first instance.  *See* 28 U.S.C. § 1367(c)(1).  In addition, because the state district court has already resolved the state-law issues in this case, an appeal of that decision, rather than a separate decision by this Court, would be most consistent with principles of comity and efficient use of use of judicial resources.  Therefore, the Court will dismiss this claim without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the City's Motion for Summary Judgment in part and deny it in part.  The Court will deny the motion with regard to Horn's substantive due process claim based on the City's improper application of the business license ordinance to Horn's peddling activities.  The Court will grant the City summary judgment on Horn's substantive due process claim based on enactment of Ordinance No. 459, Horn's First Amendment retaliation claim, and Horn's requests for declaratory judgment in Count III.  The Court will dismiss Horn's request for a declaratory judgment in Count II without prejudice.

An Order consistent with this Opinion will be entered.

Dated:  March 29, 2013                                      /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE